UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                          Chapter 13
Douglas J. Dionne and
Virginia H. Dionne,                                            Case No. 08-34135-svk
        Debtors.

**MEMORANDUM DECISION
ON OBJECTION TO CONFIRMATION**

### Facts and Procedural Background

In *In re Nockerts*, this Court held that debtors who intended to surrender their home to their mortgage lender could nevertheless deduct the mortgage payments as "scheduled as contractually due" on their Chapter 7 means test. 357 B.R. 497 (Bankr. E.D. Wis. 2006). The *Nockerts* opinion contains a lengthy quote from *In re Crittendon*, concluding that the issue may be "materially different" in the Chapter 13 context. 2006 Bankr. LEXIS 2172 (Bankr. M.D.N.C. Sept. 1, 2006). This is a Chapter 13 case in which Douglas and Virginia Dionne (the "Debtors") propose to surrender a vehicle to their secured creditor, but have deducted the $226 monthly car payment in computing their projected disposable income. The Trustee has objected to confirmation of their plan, and the Debtors have responded that the Court should reexamine the dicta in *Nockerts* and allow the deduction.

### Analysis

The Trustee contends that the Debtors are not dedicating all of their projected disposable income to unsecured creditors, as required by § 1325(b)(1)(B) of the Bankruptcy Code, which states:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B).

The Bankruptcy Code defines "disposable income" as the debtor's current monthly income less the amounts reasonably necessary to be expended for the debtor's support. 11 U.S.C. § 1325(b)(2). Current monthly income is another defined term, and generally is the

debtor's average monthly income from the six months prior to the petition. 11 U.S.C. § 101(10A).

Significantly, for debtors with income above the state median, § 1325(b)(3) states that deductions for "amounts reasonably necessary to be expended under paragraph (2) . . . shall be" calculated in accordance with § 707(b)(2)(A) and (B). Section 707(b)(2) is the Chapter 7 "means test" provision. This Court recognized the mandatory nature and often anomalous results of § 1325(b)(3) in *In re Guzman*: "Although contrary to the stated purpose of BAPCPA and seemingly discriminatory against chapter 13 debtors with incomes below the median, the unambiguous language of the new statute compels but one answer: the above-median debtor's expense deductions are governed by Form B22C, not by Schedule J." 345 B.R. 640, 643 (Bankr. E.D. Wis. 2006); *see also In re Quigley*, 391 B.R. 294, 314 (Bankr. N.D. W. Va. 2008) ("The expense deductions allowed by § 707(b)(2)(A)(iii), as imported into Chapter 13 by § 1325(b)(3), are a set of rules to be rigidly applied - they are not standards subject to judicial discretion and interpretation.") In computing the minimum amount that they must pay to unsecured creditors under their plan, does the mandatory application of § 707(b)(2)(A)(iii) (permitting deduction of secured payments that are scheduled as contractually due) allow the above-median Debtors in this case to deduct payments to their secured creditor, even though the Debtors propose to make no payments to that creditor, and in fact intend to surrender the secured creditor's collateral?

In one of the first cases to confront this issue, *In re Burmeister*, Judge Goldgar carefully analyzed whether the phrase "scheduled as contractually due" in § 707(b)(2)(A)(iii)(I) should be construed differently in Chapter 13 than Chapter 7, and the relevance of the Chapter 13 debtor's intention to surrender the collateral. 378 B.R. 227 (Bankr. N.D. Ill. 2007). He concluded that amounts scheduled as contractually due are determined at the petition date whether in Chapter 7 or Chapter 13, and should be deducted regardless of whether the debtor intends to surrender the collateral after the petition. *See also Hildebrand v. Thomas (In re Thomas)*, 395 B.R. 914 (B.A.P. 6th Cir. 2008) (discerning no logical reason why disposable income should be calculated differently in Chapter 13 than it is in Chapter 7); *In re Turner*, 384 B.R. 537 (Bankr. S.D. Ind. 2008) (debtor's $1,521 mortgage payment was not included in disposable income even though debtor intended to surrender the home). In other words, the determination is the same in Chapter 13 and Chapter 7, because the Code requires application of § 707(b)(2)(A)(iii) in both Chapters, and that provision directs the court to examine whether a debtor has scheduled payments as of the date of the petition. Although the debtors in *Burmeister* intended to surrender the collateral, the payments "were nonetheless 'contractually due' and so had to be deducted under section 707(b)(2)(A)(iii)(I)." *Burmeister*, 378 B.R. at 231 (quoting Keith M. Lundin, *Chapter 13 Bankruptcy*, § 485.1 (3d ed. 2000 & Supp. 2006), and noting that amounts "contractually due" under this provision will "include amounts that will never be paid through any Chapter 13 plan because . . . the collateral will be surrendered").

Although numerous courts have adopted Judge Goldgar's reasoning in *Burmeister*, *see, e.g., In re Willette*, 395 B.R. 308 (Bankr. D. Vt. 2008), the viewpoint is not unanimous. For example, the *Crittendon* court, cited in *Nockerts*, and my colleague in *In re Van Bodegom Smith*, differentiate between Chapter 13 and Chapter 7 cases in allowing the deduction of payments when the collateral is being surrendered. 383 B.R. 441 (Bankr. E.D. Wis. 2008). The analysis in *Crittendon*, followed by *Van Bodegom Smith*, hinges on the language in § 1325(b)(1) that "as of

2

the effective date of the plan," the projected disposable income must be dedicated to payment of unsecured creditors. Since the debtor will have surrendered the collateral at or before plan confirmation, these cases conclude that no payments are contractually due as of that date. However, the petition date, not the effective date of the plan, controls the timing of the calculation of a debtor's projected disposable income, because § 1325(b)(3) mandates that expenses "shall be" those specified in § 707(b)(2)(A) and (B), and § 707(b)(2)(A)(iii) expressly refers to the "60 months following the petition date," in delineating the payments to be deducted. This specific definitional language would be rendered meaningless if the confirmation date were the operative date. *See In re Smith*, 2008 Bankr. LEXIS 3149 (Bankr. W.D. Wash. Nov. 14, 2008); *Willette*, *supra,* 395 B.R. at 326-27 ("The relevant point in time that determines whether a debtor may take a deduction for secured claims on the means test is the petition date, not later. The Court is persuaded that the events that transpired after the Debtor filed for bankruptcy had no bearing on the mortgage expense that she could include on her means test as being "contractually due" when she filed for protection under chapter 13.")

The reference to the effective date in § 1325(b)(3) is an indication of when the plan has to provide for payment of the disposable income, not "what the amount of the payment will be, which is a calculation to be 'made as of the petition date.'" *In re Quigley*, 391 B.R. 294, 311 (Bankr. N.D. W. Va. 2008) (quoting *Burmeister*, 378 B.R. at 231); *see also In re Allen*, 2008 Bankr. LEXIS 364 (Bankr. D. Kan. Feb. 15, 2008) ("scheduled as contractually due" means payments owed to secured creditors as of the petition date). The *Quigley* court determined that the calculations are to be made as of the petition date, and if the contract still requires payments at that time, the payments are deductible. In *In re Smith, supra,* the debtors claimed deductions for two homes and a car that they proposed to surrender in their Chapter 13 plan, and the court allowed the deduction stating: "As the payments at issue were scheduled as contractually due as of the petition date, such payments were properly deducted by the Debtors in calculating disposable income." 2008 Bankr. LEXIS 3149 at *14.

The courts in *Crittendon* and *Van Bodegom Smith* devised another definition for the term "scheduled as contractually due" in the Chapter 13 context. Relying on the old adage that a confirmed plan is a new contract between the debtor and the creditors, the courts postulated that if no payments are to be made to a secured creditor under this new contract because the collateral is being surrendered, then the payments are not "contractually due." However, as the *Quigley* court noted, "While explaining that a confirmed plan is akin to a 'new contract' is a useful analogy in relating a complex legal event to a layperson, a confirmation order is in no way a new contract between a debtor and the debtor's creditors." 391 B.R. at 306. Moreover, there is no Bankruptcy Code language suggesting that "contractually due" refers to payments under the Chapter 13 plan. To the contrary, § 1325 directs a debtor to calculate disposable income under the Chapter 7 means test provisions, § 707(b)(2)(A) and (B).

Even assuming that the confirmation order creates a contract, it is not the contract to which § 707(b)(2)(A)(iii) refers. Otherwise, the calculation would be incredibly complex, necessitating a determination of the plan payments to be made to each secured creditor in the 60 months after confirmation. Since the typical plan calls for the payment of pre-petition arrearages as well as regular installment payments, a determination of the "contractually due" plan payments would require the debtor to compute the amounts of all of the pre-petition sums due,

3

including late charges, attorneys fees, and other amounts that make up the secured creditors' claims. And, the "additional" amounts to be paid to secured creditors to retain the debtor's residence, vehicle and other property necessary to the debtor's support are deductible under § 707(b)(2)(A)(iv); this provision would be rendered meaningless if these amounts could be deducted under § 707(b)(2)(A)(iii). It is far more logical that the "scheduled as contractually due" language refers to the pre-petition contract between the debtor and the creditor, rather than the "new contract" created by the plan.

The *Burmeister* interpretation of the disposable income test is faithful to the "uniform, bright-line test that eliminates judicial discretion" recently recognized by Seventh Circuit Court of Appeals in *Ross-Tousey v. Neary (In re Ross-Tousey)*:

> If courts were to interpret section 707(b)(2)(A)(ii)(I) as incorporating the highly discretionary procedures revenue officers use under the IRM, the means test would be similar to the disposable income determination used before BAPCPA, when bankruptcy judges had a great deal of discretion in determining a debtor's net disposable income . . . . It was clearly Congress's intent to eliminate such discretion when it enacted BAPCPA. *See In re Spraggins*, 386 B.R. 221, 223-25 (Bankr. E.D. Wis. 2008) (stating that it was "Congressional intent to employ a bright-line test for disposable income by removing bankruptcy court 'value judgments' concerning the debtor's lifestyle"); *In re Pearl*, 394 B.R. 309, 314 (Bankr. N.D.N.Y. 2008) (Congress's intent was to "eliminate the discretion of the courts in determining what expenses are reasonable").

549 F.3d 1148, 1160 (7th Cir. 2008). Although the means test provision in *Ross-Tousey* was different than that at issue here, the employment of a clear and straight-forward test that comports with Congressional intent should be the same. The "bright-line" philosophy suggests that the application of § 707(b)(2)(A) ought not vary depending on whether the debtor filed Chapter 7 or Chapter 13. Otherwise the means test, intended to standardize the qualification for Chapter 7 relief and the calculation of disposable income for above-median debtors, would suffer unpredictability and inconsistency.

### Summary and Conclusion

The basic premise of the *Nockerts* decision remains sound: if payments on a secured claim are contractually due on the date of the petition, the above-median debtor may deduct those payments under § 707(b)(2)(A)(iii) even if the debtor intends to surrender the collateral to the secured creditor. However, this premise should be applied whether the debtor is proceeding under Chapter 7 as in *Nockerts* or Chapter 13 as the Debtors in this case. *See Turner,* 384 B.R. at 541 n. 3 (agreeing with *Nockerts'* interpretation of "scheduled as contractually due," but stating that neither the statutory text nor legislative history supports a different meaning in Chapter 13).

The Court's conclusion follows from (1) the language of § 1325(b)(3) mandating that the expenses "shall be" determined under § 707(b)(2)(A); (2) the clear reference in § 707(b)(2)(A)(iii) to determining contractually due payments from the date of the petition; (3) the absence of any evidence of Congressional intent that the provision should be applied differently

4

in Chapter 7 and Chapter 13; (4) the application of a "bright-line" rule in applying the means test; and (5) the compelling analysis of *Burmeister* and its progeny.

For these reasons, the Trustee's Objection to confirmation of the Debtors' plan is overruled. An Order confirming the plan will be entered.

Date: April 15, 2009

By the Court:

/s/ Susan Kelley
Susan V. Kelley
U.S. Bankruptcy Judge